UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERI C. LAMBETH,

    Plaintiff,

Case No. 1:16-CV-489

v.

HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-seven years of age as of the date of the ALJ's decision. (PageID.49, 79.) She obtained a high school education and was previously employed as a fast food worker and waitress. (PageID.79, 92–93.) Plaintiff applied for benefits on June 3, 2012, alleging that she had been disabled since February 1, 2005, due to arthritis in her left shoulder, panic attacks, and numbness from her hands to her elbows. (PageID.98, 116, 241–246.) Plaintiff's application was denied on May 8, 2014, and again upon reconsideration on September 10, 2014, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.138–141, 146–154.)

On May 28, 2015, Plaintiff appeared with her counsel before ALJ Theresa Jenkins for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.73–96.) In a written decision dated September 16, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.49–72.) On March 9, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–34.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 416.920(f)).

by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Jenkins determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 3, 2012, the application date. (PageID.54.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) lumbar and cervical degenerative disc disease; (2) intermittent explosive disorder; (3) post-traumatic stress disorder; (4) bipolar disorder; (5) lumbar radiculopathy; (6) major depression; (7) anxiety; (8) sacroiliac syndrome; (9) lumbar spondylosis; (10) lumbar radiculitis; and (11) polysubstance abuse. (PageID.54.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.54–55.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 416.967(b) except she needs to alternative between sitting and standing up to two times each hour. She can engage in occasional postural positioning, but she should avoid ladders, rope, scaffolds, unprotected heights, and machines with dangerous parts. She can frequently, but not continuously, use her upper extremities for reaching in all directions, including overhead as well as pushing, pulling, and operating hand controls. She is able to sustain attention and concentration for two hours at time. She can follow short, simple (not detailed) instructions and perform routine tasks with no work requiring production rate or demand pace. She should avoid work involving crises, complex decision making, or constant changes in a routine setting. She should have only occasional contact with coworkers, supervisors, and the public.

(PageID.55–56.) Continuing with the fourth step, the ALJ determined that Plaintiff was incapable

of performing her past relevant work.  (PageID.64.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations.  *See Richardson*, 735 F.2d at 964.  The expert testified that Plaintiff could perform other work as a laundry folder (2,800 regional jobs and 100,000 national jobs) and small parts assembler (900 regional positions and 23,000 national positions).  (PageID.93–94.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.[2]  (PageID.65.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 3, 2012, the application date, through September 16, 2015, date of decision.  (PageID.65–66.)

## DISCUSSION

### 1.     Opinions of the Consulting Examiners.

Plaintiff first contends the ALJ failed to give proper weight to the opinions of two examining consultants.  (PageID.1205–1206.)  The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 416.927(c)(1)-(6) in deciding the weight given to any medical opinion. See 20 C.F.R. § 416.927(c).  While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Perry ex rel. G.D. v. Comm'r of Soc. Sec.*,

---

[2] The VE also provided the job of hand packager with 3,000 regional positions and 84,000 national positions.  (PageID.94.)  However, this position was not included in the ALJ's decision.  (PageID.65.)

5

501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who . . . have examined but not treated a claimant."). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted)

On June 5, 2012, Dr. Susie Troxler, PhD., a licensed psychologist, performed a clinical psychological evaluation of Plaintiff. (PageID.672–677.) Plaintiff complained of numbness, and back and joint pain, as well as worsening depression and anxiety. (PageID.672.) She stated that it was difficult for her to concentrate as well as to motive herself. (PageID.673.) She noted she had auditory hallucinations as a side effect of taking Cymbalta in 2009, but no hallucinations before or since that time. However, she did experience paranoid thinking. (PageID.673.) She also reported difficulty following rules and getting along with others. (PageID.674.) Dr. Troxler diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, panic disorder, alcohol dependence, in sustained remission, and nicotine dependence. (PageID.677.) She also assigned a GAF score of 45 and provided a guarded prognosis. (PageID.677.) Plaintiff's symptoms appeared to be limited in responsiveness to treatment. (PageID.677.) On exam, Dr. Troxler found that Plaintiff had good immediate recall, good to fair recent memory, fair remote memory, and limited concentration and attention skills. (PageID.675.) Cognitively, she was in the intellectually deficient / borderline range. She also had limited to poor mathematical skills and poor essential knowledge of facts, common sense reasoning, and judgment. (PageID.675–676.) She concluded that Plaintiff "has the ability to respond to directions and perform simple tasks, but at a significantly reduced rate of efficiency, as her psychological symptoms would interfere with her memory, persistence and

sustained concentration, though her understanding appears intact." (PageID.676.) Furthermore, she "would probably have difficulty tolerating the stress and pressures associated with day-to-day work activity. Also . . . she would probably have difficulty interacting with others (including both co-workers and supervisors), particularly if under the stress and pressures of day to day work." (PageID.676.)

Plaintiff also underwent a psychological evaluation with Dr. Joseph Appollo on April 10, 2014. (PageID.920–928.) Dr. Appollo diagnosed Plaintiff with major depressive disorder, panic disorder, and borderline intellectual functioning. (PageID.927–928.) He also found Plaintiff's GAF score was 45. (PageID.928.) Plaintiff's demeanor was irritable, and she was reluctant to participate. (PageID.921.) Her complaints were similar to those she made to Dr. Troxler. (PageID.921.) She felt anxious and tense, as well as a feeling that people were coming into her house. There was a vague allusion to her hearing voices. (PageID.921.) After exam, Dr. Appollo concluded Plaintiff had several marked deficits, namely in the ability to understand, retain and follow instructions, the ability to sustain attention to perform simple repetitive tasks, the ability to relate to others, and in the ability to tolerate stress and pressures associated with day to day work activity. (PageID.927.)

The ALJ assigned both opinions little weight. (PageID.62–63.) Plaintiff's argument does not allege the ALJ's discussion is unsupported by substantial evidence or is flawed in some other way. Instead, she merely expresses disagreement with the ALJ's decision to afford little weight to the opinions and offers an unsupported assertion that the ALJ should have assigned them more weight. (PageID.1205–1206.) It is the ALJ, however, not the court, who is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the

entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ's decision here is supported by substantial evidence.

The ALJ noted that both Dr. Troxler and Dr. Appollo had only examined Plaintiff on one occasion. This was a proper consideration for the ALJ to make. *See* 20 C.F.R. 416.1527(c)(2). In addition, the ALJ noted that Dr. Troxler's statement finding Plaintiff had a limited response to treatment was difficult to follow given Plaintiff's long history of noncompliance with treatment. (PageID.382, 394, 396, 409, 421.) Finally, the ALJ noted numerous other records demonstrating Plaintiff's functioning and mental capacities were well above those indicated by the doctors. (PageID.419, 524–525, 700, 799, 809, 939.) In sum, the ALJ's decision to assign only little weight to the consultants' opinions is supported by substantial evidence.

### 2.    Statements of Ms. Melissa Nelson.

Next, Plaintiff contends the ALJ erred by failing to address the findings from Ms. Melissa Nelson, MS, LCAS. (PageID.1207.) Plaintiff's argument section does not reference any specific statement from Ms. Nelson. In her statement of facts, however, she references three notes dated February 19, 2015, March 18, 2015, and April 15, 2015. (PageID.1119–1200.) The February 19 visit found Plaintiff was oriented to place and person, but had frequent blackouts from anger. Her mood was anxious and guarded, and she had inadequate impulse control. While her thought process was logically linked and goal oriented, she obsessed about many things. Her concentration, judgment, and insight were fair. (PageID.972.) A mental status exam the following month revealed similar findings. Ms. Nelson thought that Plaintiff replayed the "Id" voices in her head and she displayed characteristics of having auditory complications. (PageID.1004.) Similarly in April, she

continued to have inadequate impulse control. She had a hard time controlling her emotions as well as taking her medications. (PageID.1018.) While admitting that Ms. Nelson is not an acceptable source, Plaintiff argues the ALJ should have addressed the findings under SSR 06–03p. The Court finds no error.

Plaintiff is correct that Ms. Nelson is not an acceptable source. As a counselor, she qualifies only as an "other" source. *See* 20 C.F.R. § 416.913(a), (d). Still, the regulations note that evidence from "other" sources may be used "to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments." 20 C.F.R. § 416.913(d); SSR 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). The ALJ's analysis here easily passes muster. Indeed, though not identifying her by name, the ALJ discussed several of Ms. Nelson's records. For example, the ALJ explicitly referenced the March 18, 2015, note that found Plaintiff was easily overwhelmed and became abrupt when angered. (PageID.59) (citing exhibit 28F/3). The ALJ also discussed later records of Ms. Nelson, dated in May and June of 2015, that found improvement. Namely, Plaintiff's impulse control was "adequate" and her perception was normal. She was stable on her medications. (PageID.1043.) True, the ALJ did not discuss in length the three records Plaintiff depends upon. But the ALJ is not required to discuss in detail every piece of evidence, and her failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); accord *Van Der Maas v. Comm'r of Soc. Sec.,* 198 F. App'x 521, 526 (6th Cir. 2006). The Court finds the ALJ properly considered Ms. Nelson's treatment notes. This claim of error is rejected.

Next, Plaintiff argues it was in error for the ALJ to give greater weight to the opinions

of the agency consultants than to the opinion from Ms. Nelson. (PageID.1208.) Specifically, she notes that the agency consultants did not examine the entire record when rendering their opinions. (PageID.1208.) The Court discerns no error. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Indeed, "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). However, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (internal quotations omitted). Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that the agency consultants gave their opinion on the basis of the medical record as it existed at the time the opinions were given. (PageID.63–64.) It is equally clear, from the above discussion of Ms. Nelson's statements, that the ALJ examined the entire record, including those records dated after the consultants' opinions, in arriving at her determination. The ALJ was free to consider the consultants' opinions and determine what weight, if any, they should be given. This claim of error

is rejected.

### 3. Plaintiff's Allegations of Medication Side Effects.

Plaintiff also argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to address the side effects of her medications. She references several records documenting her complaints of nausea, vomiting, decreased appetite, fatigue, nightmares, sweating, difficulty thinking, and insomnia. (PageID.1208–1209.) In evaluating a claimant's symptoms, the Commissioner will consider the "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(iv). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where the plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians).

Plaintiff provides no authority in support of her assertion that the ALJ erred, nor does she establish how these complaints, if accepted, require any limitations greater than those accounted for in the RFC. Moreover, the issue was squarely presented before the ALJ at the administrative hearing when Plaintiff, under questioning by the ALJ, testified that she was on new medications for the past two or three months and did not have any side effects. (PageID.83–84.) Furthermore, as the ALJ observed, Plaintiff's "medication regime has rarely change." (PageID.57.) In 2013, Plaintiff stated that the side effects were not severe enough to cease taking them. (PageID.839.) Finally, as the Commissioner points out, it is not the case that the ALJ failed entirely to discuss Plaintiff's side effects. For example, the ALJ noted records indicating Plaintiff's complaints regarding Cymbalta.,

and that her complained of side effects ended when she stopped taking that medication. (PageID.62.) The Court concludes Plaintiff has not demonstrated error mandating a different result. As noted above, the ALJ cited numerous instances in which Plaintiff failed to follow prescribed treatment or was functioning above the levels recognized by consulting examiners. The ALJ also had the benefit of the agency consultant opinions. All this provides more than substantial evidence supporting the ALJ's RFC determination. Any error in failing to discuss Plaintiff's side effects more fully would not change the ALJ's ultimate RFC determination. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

### 4. Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that she was impaired to an extent much greater than that recognized by the ALJ. She testified that her "body is all done." She experienced pain in her lower back and knees, and her hands were always numb. (PageID.81.) She was unable to lift, carry, push, or pull any weights. (PageID.82.) She experienced emotional difficulties and would isolate herself. (PageID.84.) The ALJ found Plaintiff's complaints were "not entirely credible." (PageID.57.) Plaintiff claims the ALJ erred in doing so. (PageID.1209–1211.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash*

*v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held

that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ found that the record did not support the severity of Plaintiff's complaints. (PageID.57.) This conclusion is well supported. Plaintiff previously reported pain after picking up and flinging tires. She had an MRI scheduled for March 23, 2006, but canceled the appointment since she was satisfied with the pain relief from pain medication. (PageID.382.) On August 1, 2007, Plaintiff complained of pain after picking corn and changing the battery in her van. (PageID.379.) With medication, however, she reported being "functional." (PageID.379.) The ALJ also observed other statements made by Plaintiff were demonstrably incorrect, noting for example, that Plaintiff told Ms. Nelson that an ALJ had agreed at her hearing she should not work. (PageID.1043.) As the ALJ noted, no such statement was made. (PageID.1043.) The ALJ reasonably determined this incorrect statement negatively affected the credibility of her complaints. In sum, substantial evidence supports the ALJ's decision to discount the credibility of Plaintiff's complaints. The Court finds no compelling reason to set aside the ALJ's determination. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.

Dated: February 6, 2017  /s/ Paul L. Maloney
PAUL L. MALONEY
United States District Judge